**Marita LUSK, Appellant–Plaintiff,**

v.

**James D. SWANSON, M.D., Appellee–Defendant.**

No. 15A01–0101–CV–029.

Court of Appeals of Indiana.

Aug. 14, 2001.

---

Lorie Brown, Brown Law Offices, Indianapolis, IN, Attorney for Appellant.

Thomas J. Gaunt, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Marita Lusk appeals the trial court's grant of summary judgment in favor of appellee-defendant James D. Swanson, M.D. Specifically, Lusk contends that the trial court erred in determining that her claims were barred by the statute of limitations and that she had failed to establish a prima facie case of negligence. In addition, Lusk contends that the trial court erred in not granting summary judgment in her favor.

## FACTS

The facts most favorable to the non-moving party are that Lusk fell and injured herself on August 18, 1996. Subsequently, Dr. Swanson, an orthopedic surgeon at Dearborn County Hospital, diagnosed Lusk as having an upper arm fracture. Dr. Swanson continued to treat Lusk for her injury until January 17, 1997.

On August 31, 1998, Lusk filed a proposed complaint with the Indiana Department of Insurance (IDOI) alleging that Dr. Swanson and Dearborn County Hospital had committed medical malpractice by negligently failing to diagnose and treat a wrist fracture.[1] Shortly thereafter, on September 9, 1998, the IDOI sent Dr. Swanson a letter informing him that he had not complied with the provisions of the Medical Malpractice Act (Act)[2] and, therefore, the IDOI would have no jurisdiction over Lusk's claims against him.[3] Record at 25. This letter was copied to Lusk's attorney.

The IDOI sent a second letter to Dr. Swanson on September 23, 1998, stating: "if Indiana Code 34–18–1–1, et seq. is applicable to this claim," either party may request formation of a Medical Review Panel. R. at 26. On June 28, 1999, the IDOI sent a third letter to Dr. Swanson notifying him that he was not covered by the Act. R. at 32. This letter was also copied to Lusk's attorney.

One month later, on July 29, 1999, Lusk filed her complaint against Dr. Swanson in the Dearborn Circuit Court. On June 29, 2000, Dr. Swanson filed a motion for summary judgment on the basis that Lusk's

---

1. On November 4, 1998, Lusk filed an amended proposed complaint with the IDOI withdrawing all claims against Dearborn County Hospital. Record at 30.

2. IND.CODE §§ 34–18–1–1 to 34–18–18–2.

3. Specifically, Dr. Swanson had not filed proof of financial responsibility and had not paid the surcharge required by the Act at the time of the alleged malpractice. R. at 25.

claims were barred by the two-year statute of limitations and that she had failed to establish a prima facie case of medical negligence. In support of her opposition to Dr. Swanson's motion, Lusk designated the affidavit of Dr. James M. Gaither, M.D., a pulmonologist,[4] to establish that Dr. Swanson failed to meet the applicable standard of care in treating Lusk.

The trial court held a hearing on Dr. Swanson's motion on August 17, 2000. On October 3, 2000, the trial court entered summary judgment in favor of Dr. Swanson. Specifically, the trial court held that the statute of limitations barred Lusk's complaint. In addition, the trial court held that Lusk had not established a prima facie case of medical negligence because Dr. Gaither's affidavit failed to state: 1) that he was familiar with the standard of care of an orthopedic surgeon; 2) that he was familiar with the standard of care under the same or similar circumstances; 3) what the standard of care is; 4) and that Dr. Swanson's treatment of Lusk fell below that standard. Lusk now appeals.

### DISCUSSION AND DECISION
#### I. Standard of Review

The standard of review of a summary judgment is well settled. This court applies the same standard as the trial court. *USA Life One Ins. Co. v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). We do not weigh the evidence designated by the parties. Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and the evidence show both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C);

*Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.*

#### II. Lusk's Claims

Lusk first contends that the trial court erred in determining that her claims were barred by the statute of limitations. IND. CODE § 34-11-2-2 requires that complaints against healthcare providers based upon their rendering of professional services must be "filed within two (2) years from the date of the act, omission, or neglect complained of." Because Dr. Swanson last treated Lusk on January 17, 1997, Lusk's claims should have been filed no later than January 17, 1999. Lusk did not file her complaint until July 29, 1999, and, therefore, the trial court determined that her claim was time-barred. However, Lusk argues that the statute of limitations was tolled until she received a copy of the third letter from the IDOI on June 28, 1999, stating that Dr. Swanson was not a qualified provider under the Act.

In addressing Lusk's contention, we note that the Act provides for establishing medical review panels "to review all proposed malpractice complaints against healthcare providers covered by this article" and tolls the applicable statute of limitations until ninety days after receipt of the panel's opinion. I.C. § 34-18-10-1; I.C. § 34-18-7-3. The Act also provides that no action may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel and the panel renders an opinion. I.C. § 34-18-8-4. However, if a healthcare provider fails to qualify under the Act, its provisions are

---

4. A pulmonologist is a specialist in the anatomy, physiology, and pathology of the lungs. *Merriam Webster's Medical Dictionary, at*

http://www.InteliHealth.com (last visited July 16, 2001).

inapplicable and the statute of limitations is not tolled. *See* I.C. § 34–18–3–1.

We also note that in *Guinn v. Light,* 558 N.E.2d 821, 824 (Ind.1990), our supreme court determined that filing a proposed complaint with the IDOI tolls the statute of limitations until the IDOI informs the claimant that the provider is not qualified under the Act. Upon such notice, the statute begins to run again and the claimant must file an action in court or risk being time-barred. *Id.* Moreover, in *Shenefield v. Barrette,* 716 N.E.2d 1, 4–5 (Ind.Ct.App. 1999), this court indicated that when conflicting information is provided to the claimant concerning the qualified status of a physician under the Act, there is an affirmative obligation on the part of the claimant to determine from the IDOI whether the doctor is qualified.

Here, the statute of limitations was tolled when Lusk filed her proposed complaint with the IDOI on August 31, 1998. However, the IDOI's September 9, 1998 letter to Dr. Swanson, which was copied to Lusk's counsel, informed Lusk that Dr. Swanson was not covered by the Act. Upon such notification to Lusk, the statute of limitations began running again. *See id.*

 Nevertheless, Lusk contends that the second letter from the IDOI indicated that Dr. Swanson was covered by the Act, and therefore, the limitations period remained tolled until June 28, 1999, the date of the third correspondence from IDOI. The second letter from the IDOI was sent on September 23, 1998, and stated that: "*If* Indiana Code 34–18–1–1, et seq. is applicable to this claim," either party may request formation of a Medical Review Panel. R. at 26 (emphasis supplied). However, this letter is a standard form letter that goes out whenever a medical malpractice complaint is filed with the IDOI,[5] and, contrary to Lusk's assertion, its conditional language does not indicate that Dr. Swanson is covered by the Act in contradiction to the first letter from the IDOI. Moreover, if the language of the second letter confused Lusk, she had an affirmative duty to inquire into Dr. Swanson's qualification under the Act. *See Shenefield,* 716 N.E.2d at 5. Thus, Lusk's complaint should have been filed no later than January 26, 1999 (that is, January 17 plus the nine days that the statute of limitations was tolled from August 31, 1998, when Lusk filed with the IDOI, until September 9, 1998, when she was informed that Dr. Swanson was not covered by the Act). Because she did not file her complaint until July 29, 1999, it was time-barred and the trial court properly granted summary judgment in favor of Dr. Swanson.

 Lusk also contends that the trial court erred in determining that she failed to establish a prima facie case of negligence against Dr. Swanson. Specifically, Lusk asserts that she was not required to present expert testimony to satisfy her burden of showing a genuine issue of material fact because the issues presented in her claim were capable of being understood by a layperson without expert assistance. In the alternative, Lusk argues that the contents of her expert witness's affidavit were sufficient to satisfy her burden even though he failed to specifically state that he was familiar with the requi-

---

5. Dr. Swanson attached the affidavit of Julie Nahas, Manager of the Medical Malpractice Division of the IDOI to his Memorandum in Support of Defendant's Motion for Summary Judgment. In her affidavit, Nahas states that the third letter sent to Dr. Swanson is "a form letter which was inapplicable to this matter since Dr. Swanson was not a qualified health care provider at the time of the alleged act." R. at 39.

site standard of care.[6]

■ In addressing the sufficiency of a medical malpractice action based upon negligence, we note that the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). Because of the complex nature of medical diagnosis and treatment, expert testimony is generally required to establish the applicable standard of care. *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind.Ct.App.1995), *trans. denied.* However, expert testimony is not required "where deviation from the standard of care is a matter commonly known by lay persons." *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind.1992). "Cases which do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign objects from the patient's body. The rationale underlying these cases is that the facts themselves are sufficient to raise an inference of negligence without expert testimony." *Simms*, 651 N.E.2d at 350.

■ Here, we cannot say that a layperson could infer, based solely on the facts of this case, that Dr. Swanson was negligent in failing to diagnose and treat a "transverse fracture of the carpal navicular bone" in Lusk's right wrist. R. at 5. Therefore, Lusk was required to present expert medical testimony raising a genuine factual dispute in order to preclude summary judgment. Where this expert testimony is presented in the form of an affidavit, the affidavit must set forth that the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care is, and that the defendant's treatment of the plaintiff fell below that standard of care. *Id.*

■ Here, Dr. Gaither failed to state in his affidavit that he was familiar with the standard of care for orthopedic surgeons. In addition, he failed to articulate the requisite standard of care and that Dr. Swanson's treatment of Lusk fell below that standard. R. at 65–66. Nevertheless, Lusk asserts that while Dr. Gaither did not expressly state that he was familiar with the requisite standard of care, such familiarity is nevertheless evident from the contents of his affidavit. Lusk relies upon this court's opinion in *Aldrich v. Coda*, 732 N.E.2d 243, 246 (Ind.Ct.App.2000), to support his argument that Dr. Gaither's affidavit is sufficient to establish a genuine issue of fact and preclude summary judgment.

*Aldrich* involved a medical malpractice claim alleging that a podiatrist was negligent with regard to a procedure to correct deformities in the plaintiff's feet. *Id.* at 244. The trial court determined that the plaintiff's expert witness's affidavit was insufficient to create a genuine issue of material fact to overcome the defendant's motion for summary judgment because the expert, an orthopedic surgeon, did not state that he was familiar with the standard of care for podiatrists. *Id.* On ap-

---

6. Lusk also argues that Dr. Swanson's affidavit attached to his motion for summary judgment is insufficient to shift the burden to her of establishing an issue of disputed fact. We note that Lusk did not raise this issue with the trial court. A party may not raise an issue on appeal that was not raised in the trial court unless the opposing party has unequivocal notice of this issue. *Transcon. Tech. Servs. v. Allen*, 642 N.E.2d 981, 983 n. 1 (Ind.Ct.App. 1994), *trans. denied.* Dr. Swanson did not have such notice. Thus, this issue is waived for our consideration.

peal, this court reversed the trial court. We stated that, while it would have been preferable for plaintiff's expert to expressly state that he was familiar with the applicable standard of care for podiatrists, it was evident from the opinion letter attached to his affidavit, which specifically described the procedure to correct the deformities in the plaintiff's feet, that he was indeed familiar with the applicable standard of care. *Id.* at 246.

However, while it was reasonable in *Aldrich* to conclude that an orthopedic surgeon who diagnoses and corrects skeletal deformities may be qualified to render an opinion on the standard of care of a podiatrist in such matters, it is not similarly reasonable to conclude that a pulmonologist is familiar with the standard of care required of an orthopedic surgeon. Further, Dr. Gaither's familiarity with the requisite standard of care is not apparent from the contents of his affidavit, which, in essence, states that Dr. Swanson should have ordered x-rays of Lusk's wrist, but does not evidence any particular knowledge or expertise in orthopedics. R. at 65–66. Accordingly, we reject Lusk's argument that the case at bar is analogous to *Aldrich,* and we conclude that the contents of Dr. Gaither's affidavit are insufficient to establish a disputed issue of material fact and defeat Dr. Swanson's motion for summary judgment.

Finally, inasmuch as we have determined that the trial court did not err, we reject Lusk's contention that the trial court should have granted summary judgment in her favor.

Judgment affirmed.

MATHIAS, J., concurs.

BAILEY, concurs in result with opinion.

BAILEY, Judge, concurring in result.

I agree with the majority's analysis of the dispositive issue; namely, whether Lusk timely filed her complaint. As such, I concur with the majority's affirmance of the trial court's grant of summary judgment in favor of Dr. Swanson. However, I write separately to respond to the dicta that arose from the majority's decision to further address whether Lusk presented a prima facie case of negligence against Dr. Swanson.

In regards to the sufficiency of Lusk's negligence claim, she presents a two-part argument to avoid summary judgment. First, she argues that Dr. Swanson's negligence was capable of being understood by a layperson without expert testimony; secondly, she contends that her expert witness did not need to specifically state that he was familiar with the requisite standard of care. Lusk contends that either her affidavit, which described her interactions with Dr. Swanson following her injury, or that of her expert, Dr. Gaither, was sufficient to establish a genuine issue of material fact. I agree.

Expert medical testimony is usually required to determine whether a physician's conduct fell below the applicable standard of care. *Bader v. Johnson,* 732 N.E.2d 1212, 1217 (Ind.2000). Generally, this is because of the technical and complicated nature of the medical treatment, which makes it impossible for a trier of fact to apply the standard of care without the benefit of expert opinion on the ultimate question of breach of duty. *Id.* at 1217–18. However, "not all medical malpractice cases are so technical that they require expert testimony." *Harris v. Raymond,* 715 N.E.2d 388, 394 (Ind.1999) *reh'g denied.* Where the failure is such that lay people could comprehend that a failure had occurred without needing expert opinion,

none is required. *Bowman v. Beghin,* 713 N.E.2d 913, 916 (Ind.Ct.App.1999).

To assess whether a lay person could appreciate the significance of Dr. Swanson's failure to diagnose Lusk's broken bone in her wrist, one must first consider the facts of the alleged negligence, as put forth by the parties in their designated affidavits, in support of, and in opposition to, summary judgment. In pertinent part, those affidavits provide as follows:

### AFFIDAVIT OF JIMMY D. SWANSON, M.D.

Jimmy D. Swanson, M.D., being first duly sworn upon his oath, deposes and states:

. . . .

6. I met the appropriate standard of care of a physician practicing under same or similar circumstances in rendering treatment to Martia [sic] Lusk.

(R. 36–37.)

### AFFIDAVIT OF MARITA LUSK

. . . .

3. That I was informed by medical staff, that I had sustained a fracture of my right upper arm, on said occasion, and the following day, August 19, 1995, on or near the facility, named above, an additional examination occurred, James D. Swanson, M.D., the attending staff physician conducting said examination, who confirmed the diagnosis of an upper arm fracture, and thereafter authorized my admittance in Dearborn County Hospital, as a patient, after reviewing my chart and the X-ray photographs obtained of my upper arm, the previous day. On said occasion, Dr. Swanson did not diagnose, nor direct that additional X-ray photographs, more complete, and including pictures of my lower wrist hand and arm, be obtained, nor indicated concern that any wrist fracture was present or possible, as a result of my fall, though I complained of pain that day, throughout the limb.

4. That from the date of said occasion, until an occasion on or about November 11, 1996, no further X-ray photographs were directed to be taken of my right wrist area, though I met with James D. Swanson, M.D., on several occasions, in the months subsequent, to his initial examination of me and continued, on said occasions, to attempt to convey orally to him, my experience of extreme pain and tenderness, associated with my right wrist area.

5. That pursuant to James D. Swanson's directives, in follow up treatment, prescribed by him, I undertook physical rehabilitation, at an associated out patient facility, specializing in assisting in such physical rehabilitation ..., requiring me to manipulate, lift and maneuver weights, with my right wrist.

(R. 67–68.)

### AFFIDAVIT OF JAMES M. GAITHER, M.D.

. . . .

3. That the failure to order additional x-ray photographs of Marita Lusk, to include x-rays of her wrist, upon said admitting physician's examination of Marita Lusk, said day subsequent to the fall, and to the emergency x-ray photographs taken of her upper arm, revealing a fracture, assuming the truthfulness and quality of any communication of pain and tenderness of said wrist

condition, being conveyed to said admitting physician, James D. Swanson, by Marita Lust [sic], upon the occasion of said admitting examination, is more likely than not, an example of below standard treatment, care, and medical practice, as would be observed by physicians similarly situated.

4. That, continued efforts, by Marita Lusk, in follow-up visits with said admitting physician, James D. Swanson, in scheduled visits, over the course of the months subsequent to the occasion of her fall, to convey to James D. Swanson, her experienced pain and tenderness, in said wrist, assuming the truthfulness of said allegations of her attempts to so convey, not prompting and [sic] order by Dr. Swanson to x-ray the wrist, constitutes, more likely than not, further additional examples of below standard medical practice.

5. That any physical rehabilitation orders, prescribed to Marita Lusk, by James D. Swanson, M.D., directing her to attempt wrist maneuvers and mobility weight tests, stressing her wrist, prior to any diagnosis of the fracture in her wrist, after her initial examination by Dr. Swanson, constituted, more likely than not, a further and additional example of below standard medical practice.

(R. 65–66.) From these designations, it is clear that a doctor-patient relationship existed, thus invoking a duty on the part of Dr. Swanson to Lusk. It is also sufficiently alleged that Dr. Swanson failed to diagnose Lusk with a broken bone in her wrist and recommended physical therapy that caused Lusk to suffer additionally. Thus, as focused upon by the majority, the critical issue which remains is whether Lusk

has sufficiently asserted claims from which it could be determined that Dr. Swanson failed "to conform to the requisite standard of care required by the relationship[.]" *See Oelling*, 593 N.E.2d at 190.

As noted by the majority, "[c]ases which do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign object's from the patient's body." *Simms*, 651 N.E.2d at 350; *see e.g. Burke v. Capello*, 520 N.E.2d 439, 441 (Ind.1988) (involving surgical cement left inside a patient after hip surgery), overruled on other grounds by *Vergara by Vergara v. Doan*, 593 N.E.2d 185, 186 (Ind.1992); *Funk v. Bonham*, 204 Ind. 170, 180, 183 N.E. 312, 316 (1932) (addressing a surgical sponge left inside a patient's abdomen). However, this exception is not strictly limited to the foregoing fact patterns. *See e.g. Gold v. Ishak*, 720 N.E.2d 1175, 1183–84 (Ind.Ct. App.1999) (holding that "[a]lthough we have typically limited the use of common knowledge to cases involving the physician's failure to remove an object, that does not preclude the use of the res ipsa loquitur or common knowledge exception in other cases, such as this one.") In *Gold*, we held that "expert testimony is not required because a fire occurring during surgery where an instrument that emits a spark is used near a source of oxygen is not beyond the realm of the lay person to understand." Underlying each of the foregoing judgments was a determination that the jury was able to understand the doctor's conduct without extensive technical input.

Here, as averred in her Complaint and affidavit, Lusk presented to Dr. Swanson as a patient who had sustained an upper arm fracture as the result of a fall, and who, on multiple subsequent visits, continued to express pain in her wrist. Dr. Swanson did not order an X-ray of Lusk's

wrist. Rather, the eventual x-ray that revealed the broken bone in Lusk's wrist was the result of a referral from her outpatient rehabilitation clinic. As such, the averred facts are plain; namely, a fall, a fractured upper right arm, persistent pain in the right wrist, and failure to diagnose. The diagnostic tool necessary to detect the broken bone in Lusk's right wrist was rudimentary—an X-ray. Given these facts, I fail to see how extensive technical input was necessary to raise a genuine issue of material fact regarding whether Dr. Swanson conformed to his requisite standard of care. Lay people could appreciate whether these facts amounted to a failure to diagnose. Accordingly, I would find that Lusk's affidavit created a genuine issue of fact regarding the element of whether Dr. Swanson conformed to his requisite standard of care.

Moreover, while the inclusion of Dr. Gaither's affidavit could be considered superfluous in light of Lusk's affidavit, Lusk could have supported her motion in opposition solely with Dr. Gaither's affidavit in that his affidavit also raised a genuine issue of material fact precluding summary judgment. Dr. Gaither's affidavit indicates that he is a "board certified physician, a graduate of a certified and fully accredited medical school, ...". (R. 65.) Thus, under the simple fact pattern of this case, he possesses more than the requisite knowledge, skill, experience, training and education to give an opinion as to whether Dr. Swanson failed to render the appropriate standard of care by failing to diagnose the fractured wrist.