## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Andrew P. Wirick
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

David G. Field
Ashlie K. Keaton
Schultz & Pogue, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny A. Lucas,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Morgan County Memorial Hospital, Dr. Claire L. Scheele, M.D., and Dr. Murat Polar, M.D.,<br><br>*Appellees-Plaintiffs* | August 7, 2015<br><br>Court of Appeals Case No. 55A01-1503-CT-93<br><br>Appeal from the Morgan Circuit Court<br><br>The Honorable Matthew G. Hanson, Judge<br><br>Cause No. 55C01-1406-CT-1158 |

**Baker, Judge.**

[1] Danny Lucas appeals the judgment of the trial court granting summary judgment in favor of Morgan County Memorial Hospital, Dr. Claire Scheele, and Dr. Murat Polar. Finding that Lucas's response in opposition to the defendants' summary judgment motion was sufficient to raise issues of material fact, we reverse.

# Facts

[2] On March 7, 2010, Lucas arrived at the emergency department of Morgan County Hospital complaining of shortness of breath, cough, and chest congestion. Following an evaluation, he was diagnosed with pneumonia and admitted to the hospital. Throughout his stay at the hospital, Lucas received medical treatment from Dr. Murat Polar and Dr. Claire Scheele.

[3] On March 10, 2010, Lucas began to complain of abdominal discomfort. Dr. Polar ordered an x-ray. On March 12, 2010, Lucas's condition worsened. He began complaining of increased shortness of breath, abdominal gas, pain, and bloating. Dr. Polar ordered a CT scan. Dr. Scheele evaluated the results of this scan and noted that Lucas had developed increasing abdominal distension and constipation since he had been admitted. Dr. Scheele concluded that this could be the result of either a blockage or infection in Lucas's intestine.

[4] On March 13, 2010, Lucas's condition had not improved and a new set of x-rays revealed increasing abdominal distension. Lucas requested a transfer to St. Francis Hospital and was transferred later that day.

[5]     On July 1, 2011, Lucas filed a proposed complaint for medical malpractice with the Indiana Department of Insurance. Lucas alleged that Morgan County Hospital, Dr. Polar, and Dr. Scheele (collectively, the defendants) were negligent in their care and treatment of Lucas, causing him bodily injury, additional medical expenses, pain and suffering, and mental anguish. On March 11, 2014, nearly three years after Lucas filed his complaint, the medical review panel issued a unanimous decision finding that the defendants had not failed to meet the standard of care and that their conduct was not a factor in Lucas's damages.

[6]     On May 30, 2014, Lucas filed a complaint in the Marion Circuit Court, reiterating the allegations contained in his complaint to the medical review panel. On June 18, 2014, both parties filed a joint motion to transfer venue and the case was transferred to the Morgan Circuit Court. On July 10, 2014, the defendants moved for summary judgment, arguing that Lucas's claim must fail as he had neglected to designate any expert opinion to rebut the opinion of the medical review panel. Lucas filed a response to this motion, in which he designated the affidavit of Dr. Kevin Felner. Lucas designated Dr. Felner's curriculum vitae (CV) as evidence of his credentials as a medical expert.

[7]     The trial court scheduled a hearing on the motion for January 15, 2015. On the day of the hearing, the defendants filed a motion to strike Dr. Felner's affidavit, arguing that Dr. Felner's affidavit did not establish his credentials as an expert and that Lucas's inclusion of Dr. Felner's CV as an exhibit was not sufficient. The defendants also argued that Dr. Felner's affidavit did not provide sufficient

information regarding what Dr. Felner believed to be the applicable standard of care.

[8] On February 12, 2015, the trial court denied the defendants' motion to strike Dr. Felner's affidavit. However, finding no genuine issues of material fact, the trial court granted the defendants' motion for summary judgment. Lucas now appeals.

## Discussion and Decision

[9] When reviewing a trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court. *Lusk v. Swanson*, 753 N.E.2d 748, 751 (Ind. Ct. App. 2001). We will liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is only appropriate when the pleadings and evidence show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Ordinarily, summary judgment is not appropriate in medical malpractice cases based upon negligence. *Aldrich v. Coda*, 732 N.E.2d 243, 245 (Ind. Ct. App. 2000). "This is especially true when the question is whether a doctor exercised the requisite standard of care under the circumstances." *Id.*

[10] Here, Lucas designated the affidavit of Dr. Felner to rebut the opinion of the medical review panel. The affidavit reads as follows:

> 1. I am over 18 years of age and I have personal knowledge of all facts stated herein.

2.      There was a deviation in the standard of care with regards to use of timely antibiotic. In addition, if there was pleural fluid present in setting of pneumonia with persistently elevated white blood cell count, that would need to be sampled if there was sufficient amount of fluid; if there was evidence of sufficient pleural fluid on chest X-ray of abdominal ct scan, then it would have been a deviation to not sample it.

3.      The patient according to the records reflect the patient had a high fever (102.9) and elevated white blood cell count 19k and left lower lobe pneumonia.

4.      The first issue is that the patient did not get antibiotics until the day after admission which is the first issue, delayed antibiotics for a patient with sepsis.

5.      The second issue is that with persistently elevated white blood cell count, several issues needs to be considered.

6.      Is the patient on the correct antibiotics—this was partly addressed by the addition of clindamycin, though I am not sure that is what most practitioners would have added.

7.      The more important issue is whether there was the development of a complication causing the white blood cell count to stay elevated implying that the infection was not being controlled with the antibiotics alone.

8.      A pleural fluid collection is not uncommon and usually needs to be assessed for if a patient is not completely improving— persistent fever (not sure if this was present, I believe not from one note) or persistently elevated white blood cell count.

9.      This fluid collection count be assessed for with chest X-ray, ultrasound (not as commonly used in 2010 as it is today) or chest CT.

10.     Of particular interest to me is the abdominal chest CT the patient had at the first hospital—the top of the abdominal CT usually includes lower cuts of the chest and if a significant amount of fluid was visible on that scan, then that would have triggered either a dedicated chest CT or an ultrasound and sampling of the fluid (if significant amount present) to assess for parapneumonic effusion (fluid that would usually improve with antibiotics alone) vs an empyema (fluid that would require

drainage with a chest tube versus removal in the operating room by thoracic surgery).

11. I hold all of the opinions above to a reasonable degree of medical certainty.

Appellant's App. p. 189-90.

[11] The defendants first argue that this affidavit is insufficient to defeat summary judgment because it does not meet the requirements of Indiana Trial Rule 56(E). This rule provides that, upon a motion for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. " T.R. 56(E). The defendants argue that Dr. Felner's affidavit does not comport with this rule because it "fails to establish his credentials as a medical expert qualified to provide opinion testimony regarding standard of care and causation." Appellee's Br. p. 12.

[12] Lucas attempted to establish Dr. Felner's credentials by designating Dr. Felner's CV as an exhibit. However, the defendants argue that Dr. Felner's CV is insufficient as it "is not a sworn statement—it contains no verification, certification, or oath, nor does it bear Dr. Felner's signature." Appellee's Br. p. 13. The defendants point out that "[u]nsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000).

[13] The defendants are correct to point out that the requirements of Trial Rule 56 are mandatory and that, when an affidavit does not meet these requirements, "the court may disregard it upon its own motion." *Miller v. Monsanto*, 626 N.E.2d 538, 543 (Ind. Ct. App. 1993). However, the trial court may also permit affidavits to be supplemented. T.R. 56(E). In this case, the defendants filed a motion to strike Dr. Felner's affidavit on the morning of the summary judgment hearing, allowing Lucas no time to supplement his response. The trial court denied the defendants' motion, noting that "the late motion filed by the Defendants to strike the affidavit is troubling and they should not be rewarded for waiting until the last minute to file their motion so that no response could be provided." Appellant's App. p. 7.

[14] We agree with the trial court. Here, the defendants do not contest the accuracy of Dr. Felner's CV, nor do they assert that Dr. Felner is not qualified to testify on such matters.[1] While they are correct that Lucas has failed to strictly comply with the requirements of Rule 56(E), it is for the trial court to determine how best to deal with this situation. Here, the trial court denied the defendants' motion to strike because it had been filed at the last minute. We have every reason to believe that, had the trial court not disposed of this case by granting the defendants' motion for summary judgment, it would have allowed Lucas an

---

[1] Dr. Felner's CV indicates that he has an extensive educational and professional background in medicine and that he is currently certified in internal, pulmonary, and critical care medicine. Appellant's App. p. 183-86.

opportunity to supplement Dr. Felner's affidavit. Accordingly, the defendants' argument on this point fails.

[15] The defendants next argue that the affidavit is insufficient to defeat summary judgment because it fails to establish a prima facie case of medical malpractice. To establish a prima facie case of medical malpractice based on negligence, the plaintiff must show: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Lusk*, 753 N.E.2d at 753.

[16] "Because of the complex nature of medical diagnosis and treatment, expert testimony is generally required to establish the applicable standard of care." *Id.* When this expert testimony is presented in the form of an affidavit, "the affidavit must set forth that the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care is, and that the defendant's treatment of the plaintiff fell below that standard of care." *Id.*

[17] Initially, the defendants reframe their previous argument and point out that "Dr. Felner's affidavit does not provide any information from which this Court could determine whether he is familiar with the standard of care" and that "his affidavit does not identify his area of practice, educational background, board certification, or other specialty training." Appellee's Br. p. 10-11. The defendants again overlook the fact that all of this information was included in

the record in Dr. Felner's CV. Appellant's App. p. 183. We decline their repeated requests to elevate form over substance.

[18] The defendants next argue that Dr. Felner's affidavit does not state: (1) what the standard of care is; (2) that the defendants' conduct fell below that standard; and (3) that the defendants' conduct caused Lucas's injury. However, we believe that the defendants interpret these requirements too literally.

[19] While it may be prudent for an affiant to include separate sentences or paragraphs addressing each of these issues in turn, there is no requirement that affidavits be broken into sentences such as: "I am familiar with the standard of care."; "The standard of care in this case is . . ." and so on. We must be mindful that the purpose of these requirements is to ensure that the affiant is competent and that his opinion actually rebuts that of the medical review panel. However well- or poorly-drafted an affidavit may be, it is sufficient if these three essential points can be gleaned from it.

[20] With this in mind, we focus on the following language from Dr. Felner's affidavit:

> 2. There was a deviation in the standard of care with regards to use of timely antibiotic.
>
> ***
>
> 4. The first issue is that the patient did not get antibiotics until the day after admission which is the first issue, delayed antibiotics for a patient with sepsis.

Appellant's App. p. 189. The following is implicit in these statements: (1) Dr. Felner believes the standard of care requires that a patient in Lucas's position be given antibiotics shortly after arrival, and (2) Dr. Felner believes that the defendants failed to do this.

[21] The only remaining requirement, that this conduct caused Lucas's injury, necessarily follows from these statements when one considers the nature of the injury that Lucas claims. In his complaint, Lucas claimed that:

> As a result of the careless and negligent acts and/or omissions of [the defendants], [Lucas] suffered bodily injury, much of which may be permanent in nature, additional medical expenses, pain and suffering, mental anguish, and other losses, expenses, costs, and damages recoverable under Indiana law.

Appellant's App. p. 10. There can be little doubt that failure to give a patient antibiotics in a timely manner will result in that patient being in the hospital longer and that, as a result of this, the patient will incur medical costs which he would not have incurred had he received timely antibiotics. Simply put, that the defendants' actions caused injury is implicit in Dr. Felner's statements. We see no need to require Dr. Felner to insert a separate statement to make that clearer to us.

[22] Summary judgment is not simply "a procedural device to be used to avoid weak claims." *Henderson v. Ind. Med. Network, Inc.*, 750 N.E.2d 798, 808 (Ind. Ct. App. 2001). Rather, "[s]ummary judgment proceedings are primarily designed to provide a speedy determination of whether a genuine issue of fact is present and must be tried." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1256 (Ind. Ct. App.

2009). That Lucas's claim may ultimately fail or that he may not be found to be entitled to all the damages he seeks is of no concern at this stage of the proceedings. In opposing a motion for summary judgment, a plaintiff need not prove his case by a preponderance of the evidence. *Brannon v. Wilson*, 733 N.E.2d 1000, 1001 (Ind. Ct. App. 2000).

[23] Here, although Dr. Felner's affidavit is far from a template for future affiants to follow, at the very least, it raises the question of whether the antibiotic was given in a timely fashion. As this is a question of material fact, summary judgment is inappropriate.

[24] The judgment of the trial court is reversed and the cause is remanded for further proceedings.

Bailey, J., and Mathias, J., concur.