FILED
Dec 13 2017, 5:31 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Bradford R. Shively
Jonathan R. Slabaugh
Elkhart, Indiana

ATTORNEYS FOR APPELLEES

Paul T. Fulkerson
Jarryd F. Anglin
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Betty J. Rumell, as Personal Representative of the Estate of Margo Sue Rumell, Deceased, | December 13, 2017 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 20A03-1704-CT-747 |
| v. | Appeal from the Elkhart Superior Court |
| Osolo Emergency Medical Services, Inc., Todd Byrket, Julie Calloway, and Kim Bryan, | The Honorable Stephen R. Bowers, Judge |
| *Appellees-Defendants* | Trial Court Cause No. 20D02-1510-CT-158 |

**Altice, Judge.**

## Case Summary

[1] Betty J. Rumell, as Personal Representative of the Estate of Margo Sue Rumell, (the Estate) appeals from the trial court's order granting summary judgment in favor of Osolo Emergency Medical Services, Inc. (Osolo EMS), Todd Byrket,

Julie Calloway, and Kim Bryan (collectively, the Defendants). The Estate argues that the trial court erroneously determined that the Estate's medical malpractice claim was barred by the applicable two-year statute of limitations.

[2] We affirm.

## Facts & Procedural History

[3] On July 19, 2013, Margo Rumell (the Decedent) experienced a medical episode while boating with a friend on Simonton Lake in Elkhart. The Decedent was taken ashore and emergency responders were summoned. Osolo EMS received the call and dispatched Byrket, an emergency medical technician, and Calloway and Bryan, both paramedics, to provide medical assistance to the Decedent.[1] Upon arrival, it was determined that the Decedent was not breathing and did not have a pulse. Resuscitation efforts commenced, which included the placement of an airway device by Byrket, after which it was noted that the Decedent had "breath sounds present and equal." *Appellant's Appendix Vol. 3* at 28. Resuscitation efforts continued, but ultimately proved to be unsuccessful.

[4] An autopsy was performed the following day by Dr. Blair Chrenka. As pertinent here, Dr. Chrenka noted that an endotracheal tube was present and that "the tip [wa]s reflected toward the left side of the patient and pointed

---

[1] It is undisputed that Byrket, Calloway, and Bryan were all employees or agents of Osolo EMS and that they were acting within the scope of their employment when they provided emergency medical assistance to the Decedent.

upwards." *Id*. at 40. She also noted that the Decedent's "GI tract [wa]s remarkable for a gas-inflated stomach." *Id*. at 41. Dr. Chrenka stated in the "Coroner's Report (Verdict)" that the Decedent's cause of death was "[c]ardiomegaly complicated by moderate coronary artery disease; placement of esophageal endotracheal tube."[2] *Id*. at 37.

[5] On July 9, 2015, the Estate filed a Proposed Complaint for Damages with the Indiana Department of Insurance (IDOI), alleging the Defendants committed medical malpractice that resulted in the Decedent's death. On July 22, 2015, the IDOI sent former counsel for the Estate a letter stating that a review of the records of the Indiana Patient's Compensation Fund (PCF) "indicates" that the Defendants were "Not Covered", i.e., were not qualified health care providers under the Indiana Medical Malpractice Act (MMA). *Id*. at 59. The IDOI also sent a letter to each of the Defendants informing them of the same.

[6] After receiving the July 22 letter, the Estate's former attorney contacted the IDOI on multiple occasions, seeking clarification of the qualified status of the Defendants for purposes of the MMA. During these subsequent telephone discussions, the IDOI informed her that it "lacked definitive proof" as to whether the Defendants were qualified health care providers under the MMA, explaining that its determination of the Defendants' non-qualified status as set forth in the July 22 letter was "based solely on a review of whether the

---

[2] In the "Autopsy Final Report", the cause of death was identified only as "[c]ardiomegaly complicated by moderate coronary artery disease." *Id*. at 39. There is no mention of placement of the endotracheal tube.

Defendants were individually listed" in the PCF's records. *Id*. at 94, 110. According to the IDOI, the "purpose" of the July 22 letters "was to advise them of the filing of the Proposed Complaint and of the IDOI's preliminary indication that the Defendants were not qualified under the [MMA]." *Id*. at 95.

[7] The IDOI also explained to the Estate's former attorney that there were a number of reasons why a qualified health care provider would not be listed in the PCF's records and that the preliminary indication could be modified if it was subsequently determined that the Defendants were qualified health care providers. The IDOI further explained that "[i]n many cases," after a health care provider receives the letter indicating they are not qualified under the MMA, "the health care provider . . . will provide additional information or documentation that demonstrates that the preliminary indication of non-qualified status should be modified to reflect that the health care provider is, in fact, qualified under the [MMA]." *Id*. at 96.

[8] In September 2015, the IDOI's records still indicated that the Defendants had not submitted affidavits or any other documentation concerning their non-qualified status under the MMA as initially indicated in the July 22 letter. The Estate's former attorney contacted the attorney for the Defendants, who stated that "the Defendants were under no obligation to submit an affidavit or other documentation to the IDOI" and that the Estate's medical malpractice claim was barred by the statute of limitations. *Id*. at 111.

[9] On October 8, 2015, after the Estate's former counsel again contacted the IDOI, the IDOI sent a second letter that mirrors the July 22 letter, except for the date. A week later, on October 15, 2015, the Estate filed a Complaint for Damages in the Elkhart Superior Court, alleging that the Defendants committed medical malpractice that resulted in the wrongful death of the Decedent. On November 10, 2015, the Defendants filed a motion to dismiss with prejudice. The Estate filed an Amended Complaint on December 4, 2015, and as a result, the trial court dismissed the Defendants' motion to dismiss as moot. On January 12, 2016, the Defendants filed a second motion to dismiss, arguing that the Estate's claim was barred by the two-year professional services statute of limitations.

[10] Prior to a hearing on the motion to dismiss, the Estate filed a motion to convert the motion to dismiss into a motion for summary judgment because the Defendants relied upon matters outside the pleadings. On March 1, 2016, the trial court granted the Estate's request and set a schedule for discovery and briefing with regard to the now-converted motion for summary judgment. On January 25, 2017, the trial court held a hearing on the motion for summary judgment and took the matter under advisement. On March 7, 2017, the trial court entered its order granting summary judgment in favor of the Defendants, concluding that the Estate's claim was barred by the two-year professional services statute of limitations. In making this determination, the trial court found that the statute of limitations recommenced when the Estate received the letter from the IDOI on July 22, 2015. The Estate now appeals. Additional facts will be provided as necessary.

[11] The Estate argues that the trial court improperly granted summary judgment in favor of the Defendants. We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

[12] The initial burden is on the summary-judgment movant to "demonstrate . . . the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully

scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

[13] The MMA governs medical malpractice claims against healthcare providers. *Ball Mem'l Hosp., Inc. v. Fair*, 26 N.E.3d 674, 679 (Ind. Ct. App. 2015), *trans. denied*. Generally, a medical malpractice action may not be brought against a health care provider until a proposed complaint has been filed with the IDOI and an opinion has been issued by a medical review panel. *Williams v. Adelsperger*, 918 N.E.2d 440, 445 (Ind. Ct. App. 2009), *trans. denied*. However, a plaintiff may bring a medical malpractice claim against a health care provider—without first filing a proposed complaint with the IDOI—if the health care provider against whom the action is brought is not qualified under the MMA. *Shenefield v. Barrette*, 716 N.E.2d 1, 2 n.1 (Ind. Ct. App. 1999).

[14] In deciding the proper forum, our Supreme Court has explained that the IDOI is the appropriate entity to make the "determination" of whether a health care provider is qualified under the MMA. *Guinn v. Light*, 558 N.E.2d 821, 824 (Ind. 1990). For this reason, the Court has noted that it is "prudent for [the plaintiff] to commence [a medical malpractice] action by filing [a] proposed complaint with the [IDOI]." *Miller v. Terre Haute Reg'l Hosp.*, 603 N.E.3d 861, 863 (Ind. 1992). This is so regardless of the ultimate qualified status of the defendant health care provider. *Id.* Moreover, the filing of a proposed complaint against a health care provider with the IDOI tolls the statute of limitations "until the parties are informed that the provider has not qualified under the [MMA]." *Id.* Upon receiving notice from the IDOI of the qualified

status of the defendant health care provider, the statute of limitations begins to run again, and the claimant must file an action in court or risk being time-barred. *Guinn*, 558 N.E.2d at 824.

[15]   Here, there is no dispute that the alleged malpractice occurred on July 19, 2013, and that the two-year professional services statute of limitations that governs such actions began to run on July 20, 2013, when the autopsy on the Decedent was performed.[3]  The Estate filed its proposed complaint with the IDOI on July 9, 2015, which the parties agree tolled the statute of limitations. *See Miller*, 603 N.E.2d at 863.  The dispute herein arises from the legal significance attributable to the letter the IDOI sent to the Estate and the Defendants on July 22, 2015, in which it "indicate[d]" that the Defendants were not qualified under the MMA. *Appellant's Appendix Vol. 3* at 59.

[16]   The Defendants maintain that the statute of limitations recommenced after the Estate received such letter and therefore, the Estate's filing of its complaint in the Elkhart Superior Court on October 15, 2017, was untimely.  The Estate, on the other hand, argues that given the unique facts of this case, the July 22 letter from the IDOI did not recommence the statute of limitations because the IDOI only set forth its preliminary determination and the qualified status of the Defendants had yet to be conclusively established.  In the alternative, the Estate

---

[3] Ind. Code § 34-11-2-3 provides that "[a]n action of any kind for damages, whether brought in contract or tort, based upon professional services rendered . . . may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of."

argues (1) that the Defendants should not profit from their failure to provide IDOI with information from which it could be conclusively determined whether the Defendants were qualified health care providers under the MMA; (2) that the Estate should not be punished because the proper procedure to be followed given the facts of this case is unclear; and (3) that the Defendants' claims that the Estate could have determined their status under the MMA are unsound and contrary to law.

[17] The dispositive issue before us is whether the July 22, 2017 letter from the IDOI recommended the statute of limitations. The parties have directed us to three opinions in which this court has examined the legal effect of similar letters sent by the IDOI to medical malpractice claimants.

[18] In *Shenefield*, the injured plaintiff received treatment from the defendant physician until June 16, 1996, and she and her husband filed a proposed complaint with the IDOI on June 16, 1998. On June 23, 1998, the IDOI sent a letter to the plaintiffs' attorney and the defendant informing them that the defendant had "failed to file 'proof of financial responsibility and payment of the required surcharge at the time of the alleged malpractice,'" and thus, the defendant "was not a qualified health care provider under the [MMA]." *Shenefield*, 716 N.E.2d at 2. Counsel for the plaintiffs reviewed the letter from the IDOI for the first time on June 29, 1998, and thereafter contacted the defendant's office and was informed by the defendant's employee that the defendant was and always had been covered by medical malpractice insurance. After not receiving proof of the defendant's insurance by July 13, 1998, the

plaintiffs' attorney filed a complaint with the trial court. The trial court granted summary judgment in favor of the defendant, concluding that the plaintiffs' complaint was time-barred. *Id*. at 3.

[19] On appeal, this court affirmed, concluding that the statute of limitations began to run again when the plaintiffs' attorney received the June 23 letter from the IDOI. *Id*. at 5. In so holding, this court rejected the plaintiffs' argument that representations made by the defendant's employee after the letter from the IDOI was received amounted to constructive fraud, noting that the plaintiffs failed to distinguish between being insured and being "qualified" under the MMA. *Id*. In addressing the procedure used by the IDOI in informing the parties, the court held that the statute of limitations remained tolled from the filing of the proposed complaint until the date of delivery of the IDOI's documentation that "notified" or "informed" the parties that the provider was not qualified under the MMA. *Id*. The court thus concluded that the plaintiffs' receipt of the IDOI's June 23 letter recommenced the running of the statute of limitations. *Id*.

[20] In *Lusk v. Swanson*, 753 N.E.2d 748 (Ind. Ct. App. 2001), *trans. denied*, this court was confronted with a similar situation. The plaintiff received treatment from the defendant, a surgeon, until January 17, 1997. The plaintiff filed a proposed complaint with the IDOI on August 31, 1998. On September 9, 1998, the IDOI sent a letter to the defendant informing him that he had not complied with the provisions of the MMA and therefore, he was not a qualified health care provider under the MMA. A copy of this letter was sent to the plaintiff's

attorney. The IDOI sent an unsolicited second letter to the defendant on September 23, 1998, that provided "*if* Indiana Code 34-18-1-1, *et seq*. is applicable to this claim," either party could request formation of a Medical Review Panel. *Id.* at 750. On June 28, 1999, the IDOI sent a third letter to the defendant again notifying him that he was not covered by the MMA. This letter was also sent to the plaintiff's attorney. The plaintiff filed a complaint in the trial court on July 29, 1999. The trial court granted summary judgment in favor of the defendant, concluding in part that the plaintiff's claims were time-barred.

[21] On appeal, this court affirmed. In so doing, the *Lusk* court rejected the plaintiff's claim that the second letter sent to the parties contradicted the first in that the conditional language used therein (i.e., "if") was an indication that the defendant was covered under the MMA. *Id.* at 752. The court noted that if the second letter created any confusion about the qualified status of the defendant, the plaintiff had an affirmative duty to inquire. *Id.* The *Lusk* court also rejected the plaintiff's extension of this argument that the language used in the second letter operated to continue the tolling of the statute of limitations until June 28, 1999, the date of the third correspondence from the IDOI. *Id.* Ultimately, the *Lusk* court held that the statute of limitations recommenced upon the plaintiff's receipt of the September 9, 1998 letter that "informed [the plaintiff] that [the defendant] was not covered by the [MMA]" and therefore the trial court properly determined that plaintiff's complaint was untimely. *Id.*

[22]     In a third case, *Burns v. Hatchett*, 786 N.E.2d 1178 (Ind. Ct. App. 2003), *trans. denied*, the plaintiff received treatment from the defendant, an orthodontist, until June 1, 1998. In December 1999, the plaintiffs'[4] attorney contacted the IDOI to determine whether the defendant was a qualified health care provider under the MMA. The IDOI informed the plaintiffs' attorney that it had no record of malpractice insurance coverage for the defendant for the years 1997 and 1998. The plaintiff's attorney then contacted the defendant, asking him to have his malpractice insurer contact his office. A representative of the defendant's malpractice insurer contacted the plaintiffs' attorney and advised that she was unsure of the defendant's qualified status, but that she would get back to him with an answer. In a subsequent call, the representative assured the plaintiffs' attorney that the defendant had complied with all the requirements of the MMA and thus, the defendant should be shown as a qualified health care provider.

[23]     On May 31, 2000, one day before the statute of limitations was set to expire, the plaintiffs filed a proposed complaint with the IDOI, thereby tolling the statute of limitations. On June 8, 2000, the plaintiffs' attorney received a letter from the IDOI advising that the defendant was not a qualified health care provider in 1998. On August 24, 2000, the plaintiffs filed an action in the trial court. The defendant filed a motion for summary judgment asserting that the plaintiffs' complaint was time-barred. The trial court granted the defendant's motion. On

---

[4] The injured party's husband was also named as a plaintiff in the action.

appeal, the *Burns* court, viewing the facts of the case as virtually indistinguishable from those in *Shenefield*, determined that the statute of limitations recommenced upon the plaintiffs' receipt of the June 8, 2000 letter from the IDOI. *Id.* at 1180. The *Burns* court therefore held that the plaintiffs' complaint was time-barred.

[24] The Defendants argue that this case is analogous to *Shenefield*, *Lusk*, and *Burns* and that the same result should be reached. Specifically, the Defendants assert that the statute of limitations began running on July 20, 2013, when the autopsy on the Decedent was performed; that the statute of limitations was tolled on July 9, 2015, when the Estate filed a proposed complaint with the IDOI; and that the statute of limitations recommenced on or about July 22, 2015, after the IDOI informed the Estate that a review of its records indicated that the Defendants were not qualified health care providers under the MMA. Pursuant to the Defendants' view of the facts, the statute of limitations on the Estate's claim expired on or about August 3, 2015. Therefore, the filing of the complaint in October 2015 was untimely.

[25] The Estate argues that *Shenefield*, *Lusk*, and *Burns* are distinguishable. Specifically, the Estate asserts that in these cases, a review of the PCF's records allowed the IDOI to conclusively determine whether the defendants were qualified under the MMA and thus, the communication of such information to the parties was sufficient to recommence the statute of limitations. Here, the Estate contends that the July 22 letter did not communicate the IDOI's conclusive determination that the Defendants were not qualified, but rather,

was only a preliminary indication. Hence, the Estate argues that the receipt of the July 22 letter did not cease the tolling of the statute of limitations.

[26] In support of this contention, the Estate designated the affidavit of Nancy Wilkins, the manager of the IDOI's Medical Malpractice Division, in which Wilkins stated that at the time it sent the July 22 letter, the IDOI "lacked definitive proof – and was not yet able to conclusively determine – whether the Defendants were qualified health care providers under the MMA". *Appellant's Appendix Vol. 3*, at 94-95. Wilkins acknowledged that the Estate's former attorney had contacted the IDOI on "multiple" occasions following the mailing of the July 22 letter, and was advised that the July 22 letter was the IDOI's "preliminary indication" and that such was based solely on a review of whether the Defendants were listed in the PCF's records. *Id*. at 95. Wilkins also acknowledged that the Estate's former attorney contacted the IDOI by telephone on October 8, 2015, at which time she was informed that the Defendants had not provided any information from which their status with regard to the MMA could be conclusively determined.

[27] The rule espoused by the Estate—that a condition precedent to the recommencement of the statute of limitations is that the IDOI make a conclusive determination as to the status of a provider under the MMA—finds no support in the language of the MMA's statute of limitations or the decision in *Shenefield*, *Lusk*, or *Burns*. In each of the cases, this court followed the rule that the statute of limitations recommenced once the parties were "informed" of the IDOI's determination as to the provider's status. *See Shenefield*, 716 N.E.2d

at 3; *Lusk*, 753 N.E.2d at 752; *Burns*, 786 N.E.2d at 1183. As the trial court properly determined, "[n]owhere in *Burns*, *Lusk*, *Shenefield*, nor indeed *Guinn*, is there any indication that the IDOI's determination needs to be 'conclusive,' 'definitive,' or otherwise beyond all possibility of subsequent modification for its receipt to recommence the statute of limitations." *Appellant's Appendix Vol. 2* at 21.

[28] Moreover, the notifications in those cases that were held sufficient to trigger the running of the statute of limitations are of the same sort[5] as the IDOI's July 22 letter received by the Estate's former counsel. As noted above, the July 22 letter from the IDOI clearly indicated that the Defendants were not covered by the MMA.

[29] The Estate attempts to distinguish the *Shenefield*, *Lusk*, and *Burns* cases by pointing to the post-letter developments and arguing that these factual distinctions dictate a different result in this case. The Estate notes that, unlike the attorneys in those cases, after receiving the July 22 letter from the IDOI, its former attorney followed up with the IDOI and was told that the information contained in the July 22 letter was not final as to the Defendants' status under the MMA. We acknowledge that the facts of this case are distinct from *Shenefield* and *Burns*, in that in those cases, the attorneys failed to make further inquiry. Nevertheless, the post-letter information did not excuse the *Burns*

---

[5] The Defendants designated the IDOI letter that the *Lusk* court held recommenced the limitations period in that case. The language of that letter is similar to that used in the July 22 letter sent to the Estate.

plaintiffs' failure to make further inquiry or file a complaint within the applicable time frame and did not give rise to a claim of constructive fraud in *Shenefield*. The initial letter sent by the IDOI was deemed to have provided the information that recommenced the running of the statute of limitations and subsequent communications had no bearing thereon.

[30] We agree with the trial court that *Lusk* is perhaps most instructive with regard to the facts before us. As noted above, in *Lusk*, the plaintiff did not initiate the communication that resulted in the delay in filing. Rather, a second letter from the IDOI contained conditional language in regard to the qualified status of the provider. First, this court held that the conditional language did not contradict the information in the first letter. Second, this court rejected the plaintiff's claim that the statute of limitations remained tolled until a third letter from the IDOI again informing the plaintiff that the defendant was not a qualified health care provider, noting that it was incumbent on the plaintiff to inquire about the status of the defendant upon receiving the second letter. At most, in both *Lusk* and this case, the subsequent communication with or from the IDOI suggested only the possibility that the IDOI's initial determination as to the status of the defendant could be changed. And while the Estate's former attorney made an affirmative attempt to determine the Defendants' status by contacting the IDOI directly, it remains that the information subsequently received from the IDOI was not inconsistent with the information provided in the July 22 letter. In short, there is nothing in the cited cases that indicates that the statute of

limitations ceases to run while further inquiry takes place or where there is a possibility of a subsequent modification of the IDOI's initial determination.

[31] Here, the July 22 letter made clear that based upon a review of the PCF's records, the Defendants were not qualified health care providers. The Estate's former attorney followed up with the IDOI. The information she received from the IDOI, although indicating that the status of the Defendants could be changed, did not in any way contradict the information concerning the Defendants' status that was provided to the Estate in the July 22 letter. As in *Shenefield*, *Burns*, and *Lusk*, the July 22 letter from the IDOI that informed the Estate of the status of the Defendants recommenced the running of the statute of limitations.

[32] In response to the Defendants' suggestion that the Estate could have beat the running of the statute of limitations by simply filing a complaint with the trial court before the expiration of the limitations period, the Estate argued that such "dual filing" is contrary to Indiana law. While it is true that Indiana appellate courts have not endorsed dual filing, they have nevertheless indicated that it is a means by which a medical malpractice plaintiff may avoid the preclusive effect of a statute of limitations. Indeed, in a footnote, the court in *Shenefield* "decline[d] to require, or even endorse, the 'double filing' *Guinn* appears to permit due to the potential strategic disadvantages it entails and the duplication of effort and additional expense inherent in the double filing procedure." 716 N.E.2d at 6 n.4. Yet, in the body of the opinion, the court noted that the plaintiffs "could have avoided a limitations problem by filing their complaint

with both the [IDOI] and the court." *Id*. at 6. Moreover, the Estate acknowledges that the risk associated with filing a medical malpractice complaint with the trial court[6] can be obviated by simply filing an anonymous complaint.

[33] We now turn to the Estate's claim that the Defendants should not profit from failing to disclose further documentation from which the IDOI could conclusively determine whether they were qualified under the MMA. In *Schriber v. Anonymous*, 848 N.E.2d 1061 (Ind. 2006), the Supreme Court noted that where a defendant health care provider failed to file a certificate of assumed name for its business designation and failed to "conspicuously post its license for the facility in public view," judicial tolling of the limitations period would have been an appropriate remedy for the "obfuscat[ion of] the plaintiff's inquiry into the qualified status of the facility[.]" *Id*. at 1063-64.

[34] The obfuscation in *Schriber* was more significant than that posed by the alleged obfuscation of the Defendants herein. Indeed, the defendant's conduct in *Schriber* made it difficult for the plaintiff to provide the IDOI with the proper business name to search the PCF records. Hence, there was reason to doubt the accuracy of the IDOI's determination as to the defendant's status under the MMA. Here, on the other hand, the Estate knew the identities of the

---

[6] Indiana has recognized a negligence cause of action against a medical malpractice claimant who violated the identity confidentiality provision of the MMA. *See Kho v. Pennington*, 875 N.E.2d 208 (Ind. 2007).

Defendants, so there was little reason to view the IDOI's indication that the Defendants were not qualified as suspect.

[35]    Further, while the Court in *Schriber* noted its concern that a plaintiff not be "substantially disadvantaged," it also noted concern that a plaintiff not be "excessively rewarded." *Id*. at 1064. We agree with the sentiment expressed by the trial court that to judicially toll the statute of limitations subsequent to the receipt of the July 22 letter would constitute such a reward for the Estate. The Estate would effectively be exempted from the statute of limitations despite having received essentially the same notice that recommenced the statute of limitations in *Shenefield*, *Lusk*, and *Burns*. The Estate has not established that such an exemption is warranted.

[36]    The Estate also argues that it should not be punished because, given the facts of this case, the proper procedure to be followed was "unsettled." *See Guinn*, 558 N.E.2d at 824. To the contrary, the proper procedure is settled, having been set out in *Guinn* itself, as well as *Shenefield*, *Lusk*, and *Burns*, all of which relied upon *Guinn*. These cases provide that a medical malpractice plaintiff enjoys the tolling of the statute of limitations only for as long as it takes the IDOI to come to and communicate its determination of the provider's status under the MMA.

Once the plaintiff is "informed" or "notified", the statute of limitations recommences.[7]

[37] In sum, we hold that the applicable statute of limitations was tolled from July 9, 2015 when the Estate filed the proposed complaint with the IDOI until on or about[8] July 22, 2015, when the Estate received the IDOI's letter informing the Estate that the Defendants were not qualified health care providers under the MMA. The Estate thus had until on or about August 3, 2015, to file its complaint for damages with the court. As such, the Estate's complaint, which was filed on October 15, 2017, was time-barred.

[38] Judgment affirmed.

Bailey, J., concurs.

Baker, J., concurs with separate opinion.

---

[7] We find no merit to the Defendants' assertion that the Estate should have monitored the IDOI website to determine whether the Defendants were qualified under the MMA.

[8] In *Shenefield*, this court held that a party is "notified" or "informed" of the IDOI's determination as of the date the IDOI's determination is "delivered" to the party or the party's attorney's office. 716 N.E.2d at 5. Here, the IDOI letter was dated July 22, but there is nothing in the record indicating precisely when the letter was received by former counsel for the Estate so we cannot determine the exact date upon which the statute of limitations recommenced.

| Betty J. Rumell, as Personal Representative of the Estate of Margo Sue Rumell, Deceased, | Court of Appeals Case No. 20A03-1704-CT-747 |
|---|---|
| *Appellant-Plaintiff,* | |
| v. | |
| Osolo Emergency Medical Services, Inc., Todd Byrket, Julie Calloway, and Kim Bryan, | |
| *Appellees-Defendants* | |

**Baker, Judge, concurring.**

[39] I fully concur in the majority opinion. I have no trouble with the majority's analysis, and I agree that we are compelled to affirm. But I am wholly dissatisfied with this outcome. In my opinion, this outcome will encourage obstreperous legal gamesmanship on the part of defendants to medical malpractice claims.

[40] Given the reality of the gamesmanship inherent in the setup of this legal field, however, I think it incumbent upon attorneys representing medical malpractice plaintiffs to follow the majority's advice. If the IDOI indicates a possibility that a defendant is not a qualified healthcare provider under the MMA, the best practice for the plaintiff's attorney is to immediately file a complaint with a trial court before the statute of limitations expires. Should it later become apparent that the defendant is, in fact, a qualified healthcare provider, then the litigation can be stayed during proceedings at the IDOI. But to work around uncooperative defendants and outrace an expiring statute of limitations, the lawsuit should be filed while the rest of it is figured out.

[41] I regret that this is where we find ourselves in medical malpractice litigation, but in the immortal words of Kurt Vonnegut, "So it goes."